Agenda number two. Numbers 104, 685 and 105, 575 consolidated. People versus Horatio Smith et al. Ms. Collins may proceed when you're ready. Good afternoon, Mr. Chief Justice, Honorable Justices, may it please the Court. My name is Annette Collins. I'm an Assistant State's Attorney from Cook County and I represent the people of the State of Illinois in two matters before this Court. We have brought the appeals from two decisions from the Fourth Division of the First District Appellate Court. The first of those decisions, People v. Horatio Smith, is a published opinion in which the Appellate Court found that the Circuit Court had abused its discretion in refusing defendants' requests to tender separate verdict forms in the multi-count murder indictment. What the Appellate Court did was reverse and vacate the consecutive term entered by the Circuit Court and in replacement substituted a concurrent term on the murder charge and the felony attempt armed robbery charge. The Appellate Court and Horatio Smith did this without vacating the judgment on the intentional murder count and without finding the proofs on that count in firm. The second decision that we appealed from, People v. Adam Titus, followed suit exclusively citing to the Smith decision and again did the exact same thing, did not vacate the judgment on the intentional murder count but instead simply ordered that the sentences run consecutive or excuse me, concurrent rather than mandatorily consecutive. The only justification given by the Appellate Court for what it did in this case for such an unwarranted departure from settled law was, and I'll quote from the Smith opinion, if defendant had been found guilty of felony murder predicated on attempted armed robbery and not guilty of both intentional and knowing murder, the resulting sentences would have been different. The entire premise for what the Appellate Courts did in this case was based on a mere possibility. And neither Appellate Court in either of these cases discussed how legitimate that possibility was or whether that possibility was even realized in this case. Mr. Collins, in a case such as this where a defendant is charged with all three forms of murder as well as the predicate felony, are you asserting any good reason that there should be separate verdict forms or are you rather saying that that should be the practice to allow the separate verdict forms but then you make a harmless error type of analysis in looking at the individual facts of the case? I think my argument starts with it should be left at the Circuit Court's discretion. Because the Circuit Court has the role in trial to determine the type of verdict forms and the type of charges, excuse me, the instructions provided to the jury at the close of the evidence. And in this case, particularly illustrative of why the Circuit Court did not abuse its discretion, is the case of People v. LaRachio-Smith. There was two separate felony murder counts. There was an intentional and a knowing count. There was also two separate felony charges, predicates for the felony murder counts. If the Appellate Court is correct in what was warranted and if the Circuit Court had actually abused her discretion in this case, if Judge Lampkin had abused her discretion, what the Appellate Court suggests she should have done is provided eight separate verdict forms on just the murder charge with an additional four separate verdict forms on the felony counts for a total of 12 verdict forms in this case. I would suggest to your honors that that would be a completely confusing event for the jury. It would add a layer of complexity unnecessary in the case and would, in fact, be absolutely unwarranted and potentially risking dissension among the jurors and a hung jury that's absolutely unnecessary and unwarranted under either constitutional, decisional or common law. So I think, your honor, it is our position that this is a decision best left up to the trial court. And what the Appellate Courts have done in this case and what the defendants are suggesting that this court do is under these circumstances make it basically up to the defense counsel. If he asks for it, he gets it. And if he doesn't get it, he's actually absolved from a mandatory consecutive term. That latter portion of the decision is quite amazing considering that what the Appellate Courts did in both of these cases is actually enter void judgments. Presumably what they intended to do was have the judgment be entered on the felony murder count, but that's not what the Appellate Courts did. And this particular effect is, I think, all the more unusual and unwarranted in the case of LaRachio Smith because in that case, defendant had been found guilty, certainly charged with two different felony counts, had been found guilty following a two separate felony charges, the attempt armed robbery and the armed robbery, which means that even if the Appellate Court was correct, even if judgment had not been entered on the intentional count but had been entered on the felony murder count, judgment on the felony murder based on armed robbery count, the attempt armed robbery charge that's still viable, that doesn't merge into it under any kind of king analysis, would still carry a mandatory consecutive term because that's a class one felony and obviously there was serious bodily injury here. The victim was killed. So I think all of these kind of point up the flaws inherent in the analysis of the Appellate Courts in this case. Beyond that, however, what their decisions have done is basically upended decades, if not decades, essentially reversed the one good count and its corollary rules about how general verdicts result or the assumption and presumption is that in a general verdict, every single count presented to the jury to which the proof conforms has been found guilty and also upsets the very clear requirement that a court enter judgment on the most serious charge. That's what the Appellate Courts have done in these cases. Presumably all under the rubric of giving defendant the benefit because he asked for it, but we have to get right back to the beginning to find out if there's error in this case and we have to look to see if it's error for a circuit court to refuse separate verdict forms. And I do not think anywhere in the law we can point to a decision or a principle that says that it is. In fact, we have just the opposite. We have statutes which prefer general verdict forms. We have the IPI which says you don't have to do it, but if you want to, you can. And it's interesting, if we take a look at the committee comments to the IPI, it references a very thoroughly analyzed case, Peeper v. Travis, I believe it was a 1988 case out of the Appellate Court. It also references an article, I believe it was Unhappy Birthday, Illinois One Good Count Rule is Unconstitutional. It was written by a judge. Interestingly enough, that committee comment which says circuit courts, you can do it, but you don't have to give separate verdict forms, this all occurred prior to the decision from the U.S. Supreme Court in Shad. The basis for the article about how Illinois One Good Count Rule is unconstitutional, that basis was actually rejected by a plurality of the United States Supreme Court. Unanimity is not required. That seems, that call for unanimity is unconstitutional. That seems to be the basis for why the IPI said you might want to do it in certain circumstances, but you don't have to. But how does the good count rule come into play when the defendant asks for a separate verdict form? It's simply, it doesn't really come into play at that point. It doesn't justify what the court did. What the Appellate Court did is reverse the one good count rule and say we're not going to apply it if the defendant asks for it. So there's no corollary, there's no requirement, and there's actually no decision or case law, again, or statute that says that defendant has to have what he wants when he asks for it. And in fact, multiple decisions from this court, not the least of which is People v. Cardona, but there's other decisions, you know, in the capital realm. We have Tompkins and Scott and Cardona, multiple decisions, in fact, from the 80s and 90s, where this court appeared to struggle with some of these very issues. But in Cardona, the defendant didn't ask for a separate form. No. But in Cardona and Tompkins, this court did not make the decision that it was not error or not remediable simply based on the fact that he didn't ask for it. That did not come into play within the court's analysis. It was mentioned by the court. Would it have made a difference? No. Absolutely. It shouldn't make a difference. What defendants are trying to do is constitutionalize their right to it. If they are correct, and I think the appellate court alluded to a constitutional dimension when it mentioned shad and perhaps unanimity principles, but if defendants are correct that this is a constitutional requirement, that they get these separate verdict forms, it exists, doesn't come into existence and isn't animated simply by a request. Either it's there or it's not. And certainly, if they're right, that this is somehow constitutionally mandated in Illinois, I would suggest that this would open not only the floodgates, but we would have all kinds of parallel and corollary questions with respect to retroactivity, ineffective assistance of counsel if your case is not constitutional. The problem with all of those parade of horrors that could result is we don't have to worry about those because defendants are absolutely incorrect. There is no constitutional dimension to this case. How do you address defendants' argument that they are entitled to lesser included offense instructions and in this case that felony murder is tantamount to a lesser included offense to knowing and intentional murder? That's wrong. At bottom, it does not follow. This Court has said over and over again that murder is a single offense. It has multiple means of commission, multiple mental states, but it's a single offense. To import lesser included offense analysis, which of course by necessity contemplates more than one statute, more than one offense, into the context of a single offense, absolutely has no basis and is completely illogical, not the least of which even it would upend and undo years and decades of this Court's struggle with the construct of lesser included offenses and finally clarified recently in People v. Colton. But even if this Court were to consider something analogous to a lesser included, which defendants, I believe it's Adam Titus makes the analogous to a lesser included offense argument, it can't be even analogous to a lesser included offense. First of all, felony murder doesn't have a lesser mental state. In fact, it's a misnomer to say felony murder doesn't carry a mental state. It carries a specific mental state, that of the predicate felony. So in this case, while there's an intent to commit murder, knowledge that your acts might cause or create great bodily harm, the felony murder mental state is the specific intent in these cases. So it's not a specific intent attempt armed robbery. Counsel, if I may for a moment. Sure. Do consequences play any part in this analysis? There was a time when this was such an easy issue because the consequences of being convicted of any one of these offenses was precisely the same. And if a prosecutor argued to the jury as happened here, I think, to find him guilty to felony murder, there would be no problem. But we have come up, because of special legislation, with all these different little nuances, statutory nuances, where you have a harsher consequence based upon what you're actually convicted of. Should that play any part in deciding whether we should modify our rule on general verdicts? No, it should not. I thought that was going to be your answer. I'd like you to explain it a little bit. Okay. The sentencing consequence, we are not diminishing that. It has a practical effect on the defendant. But we also realize that deeply rooted in the common law understanding of consecutive sentencing in this state is that it does not increase the range of punishment. It does not impact the discrete sentences served on the individual offenses. It merely is the manner in which those offenses are to be served. This Court has, on multiple occasions, both prior to and subsequent to the Apprendi decision, made note of that very fact. And still, to this day, this Court has refused to apply Apprendi-type principles within the context of consecutive sentencing. And that is an appropriate decision. And I believe that the U.S. Supreme Court itself, when asked to determine with respect to a jury trial right, a defendant who was found or could potentially serve consecutive small prison terms on petty offenses, whether that in the aggregate qualified him for a jury trial right, the U.S. Supreme Court said no, it did not. Because the aggregate of the punishment does not mean that the individual offense and the individual sentence is higher itself. It does not increase the range of punishment. So to make the suggestion or to base the ruling today on the fact that he's exposed, potentially exposed, we have to remember in this case, to an aggregate consecutive term, that in and of itself has no constitutional effect, nor should it have an effect on the decision-making process of the circuit court to provide general verdict or specific verdict forms. Would it ever be appropriate to look at the evidence to determine whether or not the proofs are adequate to the, to solve the case? Will you look at the evidence and say, yes, the evidence supports felony murder, yes, the evidence supports intentional murder? I think that would be absolutely proper under many circumstances. And in fact, I've seen evidence that the evidence supports felony murder. And I've suggested, I believe in my briefs, that this is one of those situations. If defendants really felt What would we do if we, or the judge do if he decided that the proofs did not establish the, one of the three, three or four charges of murder that was facing the court? I think the judge at that point has a number of things to do. The most prudent course, perhaps, would at the close of the evidence or at least prior to or during the instruction conference, after noticing that the proofs on the intentional knowing counts were very slight, the court may want to provide at that juncture separate verdict forms. At the very least to, or to, at the very least to prevent a potential for unfairness to the defendants that they would actually be having judgment entered against them on account that they were not found guilty of, potentially. I think the court always has at its disposal a motion on a directed finding, a grant of that if the proofs are inadequate at the close of the state's case. There's a number of options the circuit court has at that point. Neither of these defendants, however, and I think that that is a very significant portion of this case, neither of these defendants have attempted to suggest that the proofs on the intentional or knowing counts are somehow infirm and therefore the court's entrance of judgment on the most serious count after the return of a general verdict was somehow erroneous. That is the bulwark protection against what the defendants are complaining happened to them. The court in this case, the appellate court, provided a remedy undeserved by the defendants, unwarranted in Illinois law, unjustified by constitutional principles, and essentially in doing so removed the necessary discretion from the circuit court in this case. For these reasons and other reasons discussed in our brief, we would ask that this court reverse the judgment of the appellate court and affirm the judgment and sentences entered by the circuit courts in these cases. Thank you. Good afternoon, Your Honors. My name is Catherine Donahoe and I represent Adam Titus. I intend to speak on Mr. Titus' behalf for the first 10 minutes and then turn the argument over to Chris Buckley, who will be arguing on behalf of LaRachia Smith. As the state noted, Mr. Titus was convicted of murder and armed robbery, and he was charged with murder and armed robbery. However, Mr. Titus contends that the general verdicts in this case were not sufficiently specific to authorize separate convictions and sentences for murder and armed robbery. If Mr. Titus had only been charged with the different theories of murder, we would not be here today because the court could have entered judgment on any one of the murder theories and it would not have made a difference to Mr. Titus. However, because the state also tried Mr. Titus for armed robbery, there were vastly different sentencing consequences, depending on whether the jury found intentional and knowing murder on the one hand or felony murder on the other hand, because a felony murder finding would preclude a separate conviction and sentence for armed robbery. And Mr. Titus' counsel anticipated this and the court denied the request. The state did argue all three theories at trial, and they specifically emphasized to the jury in closing that they could convict Mr. Titus of murder even if they only found murder based on the armed robbery. They said, and I quote, even for a split second if you don't believe it was his original intention to kill him or he didn't have the intent to kill him, it doesn't matter. Thus, the state told the jury that they should convict Mr. Titus of murder even if they only found him guilty because of his participation in the armed robbery. Yet at sentencing, the state asked the court to enter judgment on intentional murder. So at trial, the state got to argue the theory that was the easiest to prove, which is felony murder based on the armed robbery. But at sentencing, they asked for judgment and sentence on the most serious count, which was intentional murder, and they got the multiple convictions and consecutive sentences. In this respect, the court decided that Mr. Titus of murder was not guilty. The state got to have it both ways, and this is not consistent with the longstanding principle that the sentencing court has to look at the judgment and sentence authorized by the jury's verdict. The state argues that having specificity in the verdicts would violate a well-settled law about jury unanimity, but this court should note that in the Supreme Court case in Shad, the defendant was tried with a felony murder, but not the underlying felony. So in this case, for example, because there is no different effect on Mr. Titus if he's convicted of intentional or knowing murder, we can put those in one category together while we distinguish them from felony murder. And the IPI instructions do provide for cases where there is a need to get specificity in the verdicts and to distinguish. We don't have to use a general verdict in every case when it's not appropriate. And for example, the sample instructions in 27.05 illustrate how the verdict forms can ask a jury to distinguish between type A murder on the one hand, which could be intentional and knowing murder, and type B murder on the other hand, which could be felony murder. And this is a practice that is used when a defendant is charged with multiple theories of murder, and there's also an instruction on second degree murder, because second degree murder cannot apply to felony murder. And just like here, an armed robbery conviction won't work when there's a felony murder conviction. Additionally, contrary to the state's assertion, the error in this case was not harmless beyond a reasonable doubt. The state does not argue that Mr. Titus was the shooter in this case. The state argues his guilt by way of his accountability for the actions of Demetrius Phipps, but there is evidence that the shooting may have been accidental. There was only one shot fired, and there's no evidence about the circumstances of the shooting, because the only witness had her back to the scene and was there. Mr. Phipps said in his video statement that he didn't see the shooting. There was no gunshot residue test. Mr. Phipps was not at trial, because he had separately pled guilty to felony murder. So the error was not harmless beyond a reasonable doubt. The only thing that can be derived from the general verdicts in this case with sufficient certainty is that the jury found Mr. Titus guilty of some type of first degree murder and armed robbery. They're not sufficiently specific to authorize the separate convictions and sentences, and the jury found Mr. Titus guilty of some type of first degree murder. And Mr. Titus asked this court to vacate his armed robbery conviction and sentence. Is it necessary for you to prevail that we abandon the one good count rule? Absolutely not. Our position is that the presumption in favor of a judgment on intentional murder that is supported by cases from Illinois just should not apply when there are adverse sentencing consequences. In that case, the one good count rule applies when the jury necessarily found every single theory that it was presented with, or when there are no sentencing consequences. But in this case, because there are sentencing consequences, the presumption should not apply. And if there are no other questions, Mr. Titus asked this court to vacate his armed robbery conviction and sentence. Thank you. Good afternoon, Your Honors. My name is Chris Buckley, and I represent the appellee Horatio Smith. We are asking this court to adopt a very simple rule. Separate verdict forms should be allowed when the state's different charging theories have different sentencing consequences. If the general verdict for an offense is to carry with it the presumption that the jury found the defendant guilty under all the state's different charging theories, then the defendant needs an opportunity to rebut that presumption when doing so would decrease his sentence. The only way of doing so is separate verdict forms. If the state objects to those separate verdict forms, or if the trial court refuses to give those separate verdict forms, then that presumption underlying a general verdict should not be applied. In this case, the state pursued three different charging theories for first-degree murder. Intentional murder, knowing murder, and felony murder. Intentional murder and knowing murder required a mandatory consecutive sentence. Felony murder did not. Horatio Smith argued at his trial that he was not guilty of any murder. He said he wasn't the offender, and he didn't know the offense was being committed. But his alternative defense theory was, if you do find me guilty of murder, it was only felony murder. In that way, he could avoid a mandatory consecutive sentence of up to four to 15 years, and the mandatory consecutive sentence he ultimately received was eight years. The trial court did not allow the jury to decide that defense theory, because it refused his request for separate verdict forms. Counsel, I have a question. Maybe you can straighten it out for me from the record. It appeared that when the request was made for separate forms, the judge said that he would give the specific verdict forms for all charges or for no charges, and that he would separate them and give a specific instruction for some offenses and not others, and then said something like, you need to think about it. Is there anything in the record that would tell us kind of what the results of the think about it happened to be? You're correct. Initially, the trial court agreed to give separate verdict forms, separating out all intentional and knowing murder on one side, and then the two different felony murder counts on the other side. They came back to the trial court and said, okay, we'll give you back the next day for the next jury instructions conference, and the state objects, and the state says this was set a bad precedent, and that there's no need for separate verdict forms, and then the judge agreed. That is all we have on the record as to why the judge refused the separate verdict forms. The judge said, there's only one offense of first degree murder in Illinois, and that's why I'm only going to give one general verdict form for first degree murder. Now, it may be true that there's only one offense of first degree murder in Illinois, but that doesn't mean you don't need separate verdict forms in specific cases. This court in People v. Villareal held that sometimes felony murder needs separate verdict forms from knowing an intentional murder, and upheld treating those completely differently, even though murder is still one offense in Illinois. The state also relies on the Wunga count rule. The Wunga count rule is based on this presumption that the jury, under a general verdict, has found the defendant guilty of all the different charging theories. The only way for the defense to rebut that is to ask for separate verdict forms. Mr. Buckley, may we as a reviewing court look at the evidence in these cases and determine whether there's sufficient evidence on which to find that the jury could reasonably or probably have convicted your client on the basis of intentional murder, and perhaps in the other case say no and come up with different results? This court can look at the evidence. We are arguing that the evidence must support the request for separate verdict forms. We are not arguing that there was insufficient evidence of intentional murder. What we are arguing is that the defense should be entitled when a rational juror could find that this was just felony murder. The defense theory needs separate verdict forms so the jury can register their agreement with the defense on that point. So the evidence is relevant to determining whether those separate verdict forms are supported. But the fact that a rational juror could also find that this was just intentional murder doesn't defeat our claim at all. We are arguing, as this is similar to a lesser-included offense, where you need instructions to support the defense theory. Since we do not know what the jury intended to do, should this go back to a new trial rather than just affirming the modification? We suggested that as an alternative remedy. Our preferred remedy is sentencing relief similar to what the appellate court did here. The appellate court here made a mandatory consecutive sentence run concurrently, and we agree that that is void. The appellate court doesn't have that power. The appellate court, though, could accomplish the same thing by saying that sentence for first-degree murder should be entered on felony murder, and that would accomplish the same thing by vacating the sentence for the predicate felony at issue here. A new trial is also an option, but a new trial would be not the most equitable and practical remedy here. The new trial would be limited to just submitting separate verdict forms and having the jury decide which of these different theories of first-degree murder is he really guilty of. It wouldn't be a whole, complete new trial. We're not submitting that the evidence was insufficient on any of these murder offenses. The other states that have dealt with this issue have found that the proper remedy is sentencing relief. We've cited at least five other court jurisdictions. They've also said at the state's option there can be a new trial if the state wants to prevail on its theory that this was intentional murder or knowing murder and not felony murder. The state objected here to separate verdict forms. The state is the one who obstructed the defense theory, so we believe under these circumstances, when it would just be a very narrow issue on retrial, it would be better just to give sentencing relief, like the appellate court did, just in a different form. We had an, if we, I think if we authorize a new trial, it's a new trial. It's not a truncated trial. We would also have no issue with that either. The new trial could, you know, start de novo. It's unclear what these other state jurisdictions have done, though. Some have indicated that you're really just deciding between these three different first-degree murder theories. And that's what the new trial would focus on. There could also be a trial de novo as well. That would also vindicate the defense's right to present their defense theory. Is there anything about the fact that the defendant has no contention that the evidence would not support, they don't have any sort of contention that the evidence doesn't support knowing or intentional murder? Does any type of harmless error analysis apply? If we were to agree with your position that if you ask for the verdict form in this particular case, you get it, or I guess even agree with Ms. Collins that, separate and apart from harmless error, that the judge did not abuse his discretion in not giving the verdict form when even the defendant agrees the evidence would support knowing or intentional murder. The error could only be harmless here if no juror could rationally find felony murder, could find in favor of the defense theory, even though a rational juror could also find knowing murder or intentional murder, could find the greater, you would have to say no rational juror could ever agree with the defense. And just like in a lesser included offense case, you could say no rational juror could agree with that lesser included offense approach. You can't just say, oh, some juror could also find the greater offense. So your position is the state should have chosen if they wanted to not to proceed under a felony murder theory? Yes, they could have easily taken away this issue by doing that, by proceeding just on intentional murder or knowing murder and taking felony murder off the table. They are the ones who charged this theory of felony murder. And now they're saying, even though we charged it, even though we argued it to the jury and had them rule on it, no rational juror could ever find felony murder here is what they're saying now, which is inconsistent with their actions at trial. I want to make certain I didn't misunderstand something you said a few moments ago. What I heard was the judge may determine the verdict forms based upon an evaluation of the evidence. That's correct. Just as in a lesser included offense case, you decide that's why we made it. The judge make this determination. The evidence in this case would support a guilty verdict of any one of the under any one of the theories. And using my exercise of discretion, I'm going to give him give a general verdict for me in that regard. The judge may cover what you've just told me that you would agree. No, no, no. You do misunderstand me, Your Honor. Our position is that if the evidence could support a felony murder theory in addition to intentional annoying murder, and there's a different sentencing consequence attached, then you need to give separate verdict forms because then you need to know which theory does the jury agree with, which theory does the jury find the defendant guilty of. Of course, the jury could find him guilty of all theories. That's quite possible, too. If the jury doesn't unanimously agree on intentional or annoying murder, if they're divided, if some find felony murder, then you can't impose sentence on intentional or annoying murder. That's our position. If there is not an agreement on exactly what theories all the jurors subscribe to. To follow up on some of those questions and something you said earlier, your theory is that if a juror or jurors could find the defendant guilty of felony murder, then we should reverse and start over, I guess. Can we look at the evidence and determine that no rational juror would find the defendant not guilty of intentional murder? I think you'd have to find that no rational. That's another way of saying no rational juror could ever find felony murder. No, I don't think so. I think if we, as Justice Fitzgerald said, they could find the defendant guilty of all three, possibly. But if we look at the evidence and can we do this and say that no rational juror under the facts and circumstances of your case would find the defendant not guilty of intentional murder, then intentional murder stands. If there's complete unanimity, if no juror finds felony murder, then you can't sentence on intentional murder. I'm sorry, I'm getting a little confused with your question. I think you're asking if, say, all the jurors agree. I'm not asking whether a juror can find the defendant guilty of felony murder. I'm asking whether if we find in reviewing the evidence that we could say, and can we do this, can we find that no juror on this jury with this evidence would find the defendant not guilty of intentional murder. We are asking for a jury to make that determination. All we're asking the reviewing court to do is to see is there sufficient evidence to support separate verdict forms on felony murder, just the same way this court does when it considers lesser included offenses. They don't go on to say that, oh, the greater offense, could jurors find just that offense. That's why we make this analogy to the lesser included offense, because it's one of the clearer ways of understanding this kind of issue. If there are no further questions, we'd ask Your Honors to give the sentencing relief as our preferred remedy, and if this court decides not to do that, we'd ask for a new trial. Thank you, Your Honors. Ms. Collins. Just briefly, Your Honors, I have to make the point over and over again, there's no error in this case. That's the reason that defense counsels are struggling to try to define why they are entitled to the request and remedy that they're seeking. Since there's no error, this certainly wouldn't be the case for the ordering of a new trial. The jury verdict, even though it was a general verdict, was sound. The jury instructions told the jury that they had to find every necessary element beyond a reasonable doubt. It would be an absolute illogic to send a case like this back for a new trial when there's no error, when there's only the merest possibility, a specter, in fact, is what defendants are alluding to. The mere possibility that this jury might have found either of these defendants guilty of felony murder. They downplay the necessary corollary to the remedy they're seeking. They completely downplay the fact that in order for them to get the remedy that they need to get by the appellate court, it's not just that they could be found guilty of felony murder. It's that they can only be found guilty of felony murder. By necessity, their very argument is that unless these jurors found me not guilty of first-degree murder intentional, not guilty of first-degree murder knowing, and guilty only of felony murder, that's the danger in this case. That's what the defendants are defining the problem with. But at the same time, neither one of these defendants wants to mount, and in this case it would be an insurmountable, but to mount the challenge to the proofs on the intentional or knowing count. Collins, is there one more option here that they would be, if they were found guilty on the two felony murders, they'd lose, we couldn't proceed with sentencing on the lesser included offense on the two felony murders? I know they made that argument as well. No, because what they're suggesting is that they get either separate verdict forms on all the various counts or maybe a type A, type B situation. So assume that the jurors returned guilty of intentional knowing, guilty of felony murder. Obviously, judgment would be entered on the intentional and knowing counts and the separate verdict form on that. So obviously we wouldn't encounter a king problem with respect to consecutive sentencing. And again, that's another problem in this case that defendants don't want to discuss. First of all, we know that general verdicts are not, excuse me, specific verdicts are not constitutionally required. There's no constitutional impediment to the use of general verdicts. They've been around for centuries and they are deeply rooted in the common law, as is the Illinois statute's definition of murder as a single offense. What defendants want to do by constitutionalizing this issue is to make it a requirement that a general verdict is somehow ambiguous and, therefore, cannot stand for the entrance of judgment on a serious consequence. Well, do we have to do what Justice Carmeier asked then? Does this court have to review and make a determination that this defendant, based on the evidence, had to be convicted of either knowing or intentional murder or both? Because the comment that was made earlier by Justice Fitzgerald, there are repercussions. If, indeed, this defendant was, the jury only found him guilty of felony murder, then the armed robbery portion, 18 years, the difference is 18 years in this particular case, right? Right. I'm one and 18 on the other. So do we make, as I understood your argument, your first argument, Ms. Collins, was that the trial judge uses, exercises his or her discretion in determining whether or not there's a separate verdict form on knowing murder, right? Right. So now we're looking at it after the fact. Do we have to assess all the evidence and determine that this particular defendant had to be convicted of either knowing or intentional murder or both under this set of circumstances? Based on the defendant's argument, they're asking this court to do so. Because they're promising, even though they are refusing to suggest that the proof is insufficient, they are asking this court to find harm. They are defining the harm themselves as I am facing a potential consecutive term when it's not warranted. Now, by defining the harm and defining the so-called error, under those circumstances, these defendants are by necessity pointing out that something is wrong with the use of the one good count rule. Something is wrong with the use of the general verdicts. And they define that wrong as in I could have been found guilty only of felony murder. But the state wanted to go to the jury with the felony murder count intact as well. I mean, you. Absolutely. Right? Absolutely. Lesser burden in proving that, right? Your Honor, I wouldn't necessarily agree with that. Everybody seems to suggest that felony murder is the easiest charge to prove. We still have to prove the specific intent for the underlying felony. We have to prove every single one of those elements. We have to show that it was done in the course of conduct. And in an accountability case, we have to show that, at least insofar as defendant Adam Titus is concerned, that he's responsible and culpable for not only his co-defendant's acts, but his co-defendant's commission of not only the underlying felony, but the felony murder and the intentional knowing counts. I do not think felony murder in all cases is necessarily the easiest to prove. I think that it has sometimes a benefit. I think that it was in this case referred to by the attorneys and the prosecutors at closing argument, but it was by no means the first thing they referred to. And, in fact, the quote that defendant for Adam Titus referred to in closing argument was the last, the very last sentence in a very long exposition about how Adam Titus was guilty of knowing murder, intentional murder. And, in fact, if I could just talk about the facts for even one second. Just on the possible action this Court would take. If we find that separate verdict forms should have been used, should we send it back for a new trial or disaffirm the modification done by the other court? This Court should do neither. And the reason I say that. I gave it either or. Okay. I still think that this Court should do neither of those particular options because of our harmless error argument. And, in fact, the relief requested by the defendant and the harm the defendant suggests occurred is directly refuted by the records in these cases where the proof on the intentional count was overwhelming. Counsel, if there were separate verdicts here and the jury returned guilty of all three, would you still be entitled to sentence the defendant on the armed robbery? Right. I would, Your Honor. In fact, it's. Because you say it all comes back to the one good count. It's the most serious. Absolutely. And, in fact, I think that example illustrates something that also is infirm and a possibility of confusion with respect to separate verdict forms. We may be in a situation where we're dealing with a defendant's argument on appeal that the verdict forms are inconsistent. That by virtue of the entrance of judgment on the felony murder count, we have now an inconsistency with respect to whether or not they can be sentenced on the underlying felony. And we have differing mental states at the same time that the jury has found both knowledge and intent. The mental state element in the felony murder case wouldn't be inconsistent with intent or knowledge, but knowledge and intent potentially would be inconsistent. And I think what that does is it points up precisely why these are decisions that are best left to the circuit court. And I think also it points up why in this case there is no harm and there was nothing erroneous with what the circuit courts did. The question of whether separate verdict forms should be given, whether it's a better practice, not whether it's legally warranted, but whether it's a better practice, shouldn't be decided within the vacuum of this individual case. Those types of decisions should be left to an IPI committee where all bar participants, all litigants, and jurists themselves could weigh in on the struggles that they face on a daily basis with respect to verdict forms. Since these verdict forms are not warranted under the common law decisional case law, this court's case law specifically, and because the Constitution does not demand separate verdict forms, this court should not find error in this case for the first time ever in contravention of decades of case law from this court. But again, like I suggested, if it is something under consideration and serious consideration from this court, this is not the venue to do so because no harm resulted and no error occurred. And for these reasons, and again, others expressed in our briefs, we would ask that the appellate court judgments be reversed and the circuit court judgments and sentences be affirmed in this case. Thank you, Counselor. Thank you. Case numbers 104-685 and 105-575, consolidated, will be taken under advisory.